# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                               **Case No. 07-CR-87**

**BRENDA FATHALLA**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Brenda Fathalla, a Canadian citizen attending college in Michigan, agreed to drive a shipment of "party pills" from Ontario to Milwaukee, Wisconsin. Law enforcement, monitoring the transaction with the help of a confidential informant, arrested defendant at the drop-off site, and the government charged her with conspiracy distribute ecstasy, contrary to 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) and 846.

Defendant pleaded guilty, and I set the case for sentencing. In imposing sentence, I calculate the advisory sentencing guideline range; consider any requests for departure from that range pursuant to the Sentencing Commission's policy statements; and then determine the actual sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., Rita v. United States, 127 S. Ct. 2456, 2465 (2007); United States v. Samuels, 521 F.3d 804, 815 (7th Cir. 2008); United States v. Cull, 446 F. Supp. 2d 961, 962 (E.D. Wis. 2006). In this memorandum, I set forth the reasons for my determinations.

## I. GUIDELINES

Agents arrested defendant with 49,693 ecstasy pills, which converts to 6211.625 kg of marijuana under U.S.S.G. § 2D1.1(c) cmt. n. 10 & 11, producing a base offense level of 34, §

2D1.1(c)(3). The parties agreed that because she lacked knowledge or understanding of the scope and structure of the conspiracy and the activities of the other participants, defendant qualified for a 4 level minimal role reduction under § 3B1.2(a). Because she qualified for such a reduction, the base level correspondingly dropped 3 levels under § 2D1.1(a)(3). Following a further 2 level reduction under the safety valve provision, §§ 2D1.1(b)(11) & 5C1.2, and a 3 level reduction for acceptance of responsibility, § 3E1.1, I adopted a final offense level of 22. Coupled with her criminal history category of I, the guidelines produced an imprisonment range of 41-51 months.

## II.  DEPARTURE

The government moved for a downward departure under U.S.S.G. § 5K1.1 to reward defendant for her substantial assistance. In ruling on a substantial assistance motion, I consider:

> (1) . . . the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

I give substantial weight to the government's evaluation of the extent of the defendant's assistance, U.S.S.G. § 5K1.1 cmt. n.3, but the extent of the departure is within my discretion. In attempting to quantify the departure, I typically use the method suggested by the Seventh

Circuit of granting something on the order of a 2-level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present. United States v. Matthews, 463 F. Supp. 2d 916, 918 (E.D. Wis. 2006).

Under the first factor, I awarded 2 levels because defendant's cooperation was significant and useful in inducing the other courier involved in this shipment to plead guilty and also cooperate. His cooperation, in turn, assisted in other investigations. I also awarded 2 levels under the second factor, as the government found defendant's information complete, truthful and reliable. I awarded 1 level under the third factor, as defendant's cooperation was limited to providing information in her case only; she engaged in no other, pro-active cooperation. I awarded no reduction under the fourth factor, as the record contained no evidence of injury, threats or particular risk. Finally, I awarded 1 level under the fifth factor, as defendant agreed to cooperate immediately on her arrest; because the parties presented no evidence that the timing was particularly significant in the investigation, I declined a full 2 level reduction.

Therefore, I granted a total reduction of 6 levels, making the range 21-27 months. I proceeded then to imposition of sentence under § 3553(a).

### III. SENTENCE

**A.   Section 3553(a) Factors**

In imposing the ultimate sentence, the district court must consider all of the factors set forth in 18 U.S.C. § 3553(a), United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct. 963 (2008), including:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in § 3553(a)(2). The district court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall v. United States, 128 S. Ct. 586, 594 (2007), but it may not presume that the guideline sentence is the correct one, Rita, 127 S. Ct. at 2465, or place any "thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). Rather, the court must make an independent determination of what sentence is sufficient but not greater than necessary, taking into account the relevant § 3553(a) factors and any non-frivolous arguments presented by the parties in support of a particular sentence. United States v. Wilms, 495 F.3d 277, 282 (6th Cir. 2007). Section 3553(a)(3), in particular, requires the court to consider non-custodial sentences even when the guidelines recommend

4

prison. Gall, 128 S. Ct. at 602.

**B.    Analysis**

    **1.    The Offense**

Brothers Phitsamay and Souksakhone Vanxay, Canadian nationals, shipped large amounts of ecstasy into Wisconsin and Tennessee. They used couriers to transport their product across the border, and employed local dealers to distribute it. I sentenced Phitsamay to 84 months in prison for his role in the conspiracy; his brother remained a fugitive.

Defendant's role in the conspiracy was to act as a courier for a single shipment. In a post-arrest statement, defendant indicated that she had been recruited to take the shipment from Canada to the United States for $8000 (Canadian). An associate of the Vanxays, whom defendant knew from high school, approached her in a bar about making the trip. As a student who regularly crossed the border for legitimate reasons, the Vanxay operative considered her an effective courier, unlikely to attract attention from the customs officials who saw her every day. Strapped for cash, defendant agreed to make the trip.

Defendant indicated that she was originally told the pills would be "vitamins," but she was later advised they were "party pills," and she admitted knowing that they were illegal drugs. Two other conspirators loaded defendant's car with the pills, and she drove to Milwaukee.

    **2.    The Defendant**

Defendant was twenty-six years old and had no prior record whatsoever. She was born in Iraq but moved to Canada with her family at age nine. She graduated from secondary school in LaSalle, Ontario, and then obtained a bachelor of science degree from Wayne State University, earning a 3.28 GPA. During the pendency of this case she completed her Master's

5

Degree in occupational therapy, with a GPA of 3.35.

Defendant's mother and sister made positive statements to the PSR writer, describing her as honest and hard-working. I also received positive letters from her boyfriend and his mother, as well as the supervisor of her educational field work. She had no history of any substance abuse. During her period of pre-trial supervision in this case, she lived with her sister in Michigan, submitted negative drug screens and otherwise complied with the conditions of bond.

### 3.     Guidelines and Purposes of Sentencing

The guidelines recommended 21-27 months in prison after the departure, but based on the highly unusual nature of this case and this defendant, I found that a sentence served in the community would suffice to satisfy the purposes of sentencing in § 3553(a)(2). Defendant's involvement in drug trafficking appeared to be truly aberrational. Given the fact that she had no prior involvement in any sort of drug-related activity, as a user or dealer, I accepted her contention that she initially did not know exactly what she was transporting. I also found that she acted at the direction of other, more seasoned dealers, who stood to gain most of the profit and who targeted her because of her status as a cross-border student-commuter, someone who could use extra money and would be quickly waived through by customs.

The record contained no indication that defendant had any role in selecting the drug type or amount involved, yet her offense level was driven largely by drug weight. The minimal role, safety valve and § 2D1.1(a)(3) reductions partially ameliorated the effect of the high drug weight, but defendant was still left with a significant guideline range. Under Booker, courts may more closely scrutinize the role of drug weight in driving the sentence called for under the guidelines, particularly where, as here, the defendant did not negotiate the transaction or know

6

much about it. See United States v. Cabrera, No. 06cr10343, 2008 WL 2879675, at *4-5 (D. Mass. July 25, 2008) (explaining that drug weight is sometimes an adequate measure of culpability, but for low level couriers, ignorant of the details of the operation, it may not be). For all of these reasons, I saw no need for prison to provide just punishment; a period of home confinement sufficed for this purpose. See 18 U.S.C. § 3553(a)(2)(A).

Nor was prison necessary to ensure protection of the public or deterrence of criminal conduct. See 18 U.S.C. § 3553(a)(2)(B) & (C). With no prior record of any sort, defendant had lived a solidly pro-social life. Unlike some who qualify for the safety valve, this defendant was a true first-time offender, not just someone with 1 criminal history point or less. Statistically, the rate of recidivism for such defendants is quite low. See United States v. Germosen, 473 F. Supp. 2d 221, 227 (D. Mass. 2007) (citing studies). It also appeared that this process had a significant impact on defendant, and she did all she could to make amends, including cooperating with the government. I found her allocation particularly insightful. In order to ensure specific deterrence, I imposed a significant period of supervision and warned defendant that any violation of her conditions could lead to revocation of probation and imposition of a sentence of up to 20 years in prison.

### IV. CONCLUSION

Therefore, I placed defendant on probation for a period of three years. As conditions, I ordered her to serve 180 days of home confinement, perform twenty hours of community service work per year in lieu of a fine, and to provide access to all financial information requested by the supervising probation officer. Other terms and conditions of the sentence appear in the judgment. This sentence varied from the guidelines, but because it was well-supported by the facts and circumstances discussed herein, including defendant's cooperation

7

and the aberrational nature of the offense conduct, it created no <u>unwarranted</u> disparity. <u>See</u> 18 U.S.C. § 3553(a)(6).

Dated at Milwaukee, Wisconsin, this 29th day of September, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge